<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

| | | |
|---|---|---|
| LUIS COLUMBIE, | : | |
| | : | |
| | : | **Civil Action No. 13-6236 (ES)** |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **MEMORANDUM OPINION** |
| | : | |
| UNIV. OF MED. AND DENTISTRY OF | : | |
| N.J., et al., | : | |
| | : | |
| **Defendants.** | : | |

_____

IT APPEARING THAT:

1.  On October 9, 2013, Plaintiff Luis Columbie ("Plaintiff"), a prisoner currently confined at Northern State Prison in Newark, New Jersey, filed a complaint pursuant to 42 U.S.C. § 1983 against Defendants University of Medicine and Dentistry ("UMDNJ"); Diane Boese; John Godinsky; Denise Johnson; and Drs. John and Jane Doe 1-2.  (D.E. No. 1 ("Compl.")).

2.  According to the allegations of the original Complaint, on an unspecified date, Plaintiff was taken to Saint Francis Medical Center to undergo an operation to remove his thyroid. (Compl. ¶ 19).  As a result of the surgery, Plaintiff's vocal chords were paralyzed, leaving Plaintiff unable to speak properly.  (*Id.*).  Plaintiff alleges that on numerous occasions, he requested that he be provided with an "Electrolarynx 'throat back,'" but Defendants refused to provide it to him. (*Id.* ¶ 25).  On or about November 5, 2010, Plaintiff was informed of a "Pinguecula" by Defendant Boese, but "the matter was wantonly disregarded by the defendant."  (*Id.* ¶ 28).  On or about June 10, 2011, Plaintiff was informed of the "inguinal hernia" by Defendant Godinsky but no further action was taken.  (*Id.* ¶ 29).  On or about September 22, 2011, Plaintiff was informed of

hyperlipidemia by Defendant Johnson, but no further action was taken.   (*Id.* ¶ 30).   On or about

March 30, 2012, Plaintiff was "informed of the hepatitis B chronic viral" by Defendant Godinsky

and told that he would be further evaluated, but "the matter was wantonly disregarded by the

defendant."   (*Id.* ¶ 31).

3.   After conducting its *sua sponte* screening, the Court dismissed the Complaint in its

entirety for failure to state a claim pursuant to 28 U.S.C. §§ 1915, 1915A.   (D.E. Nos. 2-3).

Specifically, the Court found that those incidents which occurred prior to October 9, 2011 were

barred by the statute of limitations and Plaintiff had failed to allege sufficient facts to allow the

remaining March 2012 claim to proceed.   (D.E. No. 2 at 7-8).   However, the Court granted

Plaintiff permission to file an amended complaint addressing the deficiencies identified.   (D.E.

No. 3).

4.   After several extensions, on March 13, 2015, the Court received Plaintiff's Amended

Complaint.   (D.E. No. 15 ("Am. Compl.")).   He again names the following defendants: (1)

UMDNJ; (2) Diane Boese; (3) John Godinsky; (4) Denise Johnson; and (5) Drs. Jan and John

Does.   In the Amended Complaint, Plaintiff now alleges that he did not learn about the November

2010 diagnosis of "Pinguecula" by Defendant Boese until June 2012.   (Am. Compl. ¶ 7).   He

does not provide any further information, other than to state that he did not receive "prompt,

adequate medical treatment" and he was told "there would be a further evaluation."   (*Id.*).

Plaintiff further alleges that, "[i]n June 2012, Plaintiff learned about a June 2010 diagnosis,

Inguinal Hernia, Right, entered into the record by defendant John Godinsky, but without prompt,

adequate medical treatment being provided.   He was told that there would be further evaluations

and follow-up treatment.   There was never any medical treatment provided to remove the hernia."

(*Id.* ¶ 8).

2

Plaintiff next alleges that "[i]n June 2012, Plaintiff learned about the September 2011 Hyperlipidemia diagnosis, entered by defendant Denise Johnson, again without prompt, adequate medical treatment being provided."  (*Id.* ¶ 9).  Plaintiff further alleges that, in June 2012, he "learned of the March 2012 Hepatitis B Chronic Viral diagnosis by defendant John Godinsky, without prompt, adequate medical treatment being provided."  (*Id.* ¶ 10).  He alleges that he "was hospitalized at St. Francis Medical Center and underwent an operation that resulted in the removal of his thyroid."  (*Id.* ¶ 11).  "As a result of the surgery, Plaintiff's vocal chords were permanently paralyzed where the Plaintiff cannot speak properly for the rest of his life."  (*Id.* ¶ 12).  He filed several "medical requests to be provided with an Electrolarnyx Throat Box to allow him to speak, which was denied because of costs."  (*Id.* ¶ 13).  Finally, Plaintiff alleges that "Defendants have in place a system of switching doctors, nurses and medical providers in an effort to avoid continuity and accountability of medical treatment."  (*Id.* ¶ 15).

5.   As the Court held in its previous Opinion and Order, to state a claim for deliberate indifference to a serious medical need in violation of the Eighth Amendment, a plaintiff must show (1) deliberate indifference by prison officials to (2) the prisoner's serious medical needs.  *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  "To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm."  *Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009).  Where prison officials know of the prisoner's serious medical need, deliberate indifference will be found where the official "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment."  *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  In order to find deliberate indifference, "the official must both be aware of facts from which the inference could be drawn

3

that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Claims of negligence or medical malpractice do not constitute deliberate indifference. *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 192 n.2 (3d Cir. 2001). "[M]ere disagreement as to the proper medical treatment" is also insufficient. *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (citing *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987)).

6. Even assuming that Plaintiff's claims regarding the incidents prior to October 2011 are not barred by the statute of limitations, Plaintiff has failed to allege sufficient facts under *Ashcroft v. Iqbal* to state any Eighth Amendment claims. *See* 556 U.S. 662, 678 (2009) ("[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (internal citation and quotation marks omitted)).

With regard to the "pinguecula" diagnosis by Defendant Boese, Plaintiff merely states that he did not receive prompt and adequate medical treatment. This falls well short of the pleading requirements of *Iqbal* to suggest an Eighth Amendment violation on the part of Defendant Boese. At the outset, it is not even clear that the "pinguecula" diagnosis was a serious medical need. Moreover, there are no facts provided to indicate that Defendant Boese knew of a need for medical treatment but intentionally refused to provide it, that she delayed necessary medical treatment based on a non-medical reason, or prevented Plaintiff from receiving needed or recommended medical treatment. Though Plaintiff states that he was told "there would be further evaluation," it is unclear who told him that, when he was told that, who would be providing further evaluation,

and why said individual felt that further evaluation was needed.   In sum, the few factual allegations provided are confusing and insufficient to allow this claim to proceed under *Iqbal*.

The claim regarding the "inguinal hernia" in June 2010 suffers from the same deficiencies. Plaintiff alleges that Defendant Godinsky entered the diagnosis into the record, but without prompt, adequate medical treatment being provided.   Again, it is not even clear that the hernia diagnosis was a serious medical need.   Moreover, there are no facts provided to indicate that Defendant Godinsky knew of a need for medical treatment but intentionally refused to provide it, that he delayed necessary medical treatment based on a non-medical reason, or prevented Plaintiff from receiving needed or recommended medical treatment.   Though Plaintiff states that he was told "there would be further evaluation," it is unclear who told him that, when he was told that, who would be providing further evaluation, and why said individual felt that further evaluation was needed.   As with the "pinguecula" diagnosis, the few facts provided regarding the hernia are confusing and insufficient to allow this claim to proceed under *Iqbal*.   The September 2011 "hyperlipidemia" diagnosis, entered by defendant Denise Johnson, and the March 2012 "Hepatitis B Chronic Viral" diagnosis by defendant John Godinsky, fail for the same reasons since Plaintiff merely states that these diagnoses were entered into the record "without prompt, adequate medical treatment being provided."

With regard to the "Electrolarnyx Throat Box," Plaintiff states that he underwent thyroid surgery that paralyzed his vocal chords, rendering him unable to speak properly.   He states that he filed several medical requests to be provided with an "Electrolarnyx Throat Box" to allow him to speak, but said requests were denied because of costs.   However, Plaintiff fails to identify with whom he filed these requests, who denied the requests, and why Plaintiff believes it was due to costs.   Moreover, there is no indication that this is a serious medical need and that there is a need

for medical treatment, but a medical provider intentionally refuses to provide it, that a medical provider delayed necessary medical treatment based on a non-medical reason, or a medical provider prevented Plaintiff from receiving needed or recommended medical treatment.   Rather, it appears from the allegations that Plaintiff merely disagrees with the decision to deny his request for the "throat box."   However, as stated above, mere disagreement with a medical decision is not a constitutional violation.   *See Spruill*, 372 F.3d at 235.   Given the lack of facts provided, this claim will also be dismissed without prejudice pursuant to *Iqbal*.

Finally, with regard to Plaintiff's claim that "Defendants have in place a system of switching doctors, nurses and medical providers in an effort to avoid continuity and accountability of medical treatment," it is unclear against which defendants these allegations are made and to what "system" he is referring.   Plaintiff provides no further information.   These bare allegations are insufficient to state a claim under *Iqbal*.

7.   For the reasons stated above, the Amended Complaint will be dismissed without prejudice in its entirety for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).   However, the Court will grant Plaintiff an opportunity to file a second amended complaint which cures the deficiencies noted herein.[1]   An appropriate order follows.

_s/Esther Salas_____
**Esther Salas, U.S.D.J.**

---

[1] Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]."   6 Wright, Miller & Kane, _Federal Practice and Procedure_ § 1476 (2d ed. 1990) (footnotes omitted). An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit.   _Id._   To avoid confusion, the safer course is to file an amended complaint that is complete in itself.   _Id._